Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| JUAN CARLOS VEGA MARTÍNEZ<br><br>Demandante-Apelante<br><br>Vs.<br><br>JOSÉ M. TORAL MUÑOZ FUNDACIÓN RIGOBERTO FIGUEROA FIGUEROA, CORP.<br><br>Apelado | TA2026AP00253 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2026CV00296<br><br>Sala: 503<br><br>Sobre: INJUNCTION ESTATUTARIO ART. 7.15 A LEY GENERAL DE CORPORACIONES |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de mayo de 2026.

Comparece la parte apelante, el doctor Juan Carlos Vega Martínez, solicita la revisión de la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, emitida y notificada el 28 de enero de 2026. Por medio del dictamen apelado el foro primario desestimó el caso de título por cosa juzgada, e impuso al apelante el pago de $1,500.00 a favor de cada uno de los codemandados.

Por los fundamentos expuestos en esta sentencia, *confirmamos* la sentencia apelada.

-*I*-

El 23 de enero de 2026, la parte apelante presentó *Demanda* sobre interdicto estatutario al amparo del Artículo 7.15(A) de la Ley General de Corporaciones. Solicitó la remoción de la parte apelada, el señor José M. Toral Muñoz, del puesto de director y presidente en la Fundación Rigoberto Figueroa Figueroa, Corp., por supuestas

violaciones al Artículo 19(f) y (e) de los estatutos de la fundación. El tribunal ordenó la celebración de una vista presencial de interdicto estatutario para el 30 de enero de 2026. El 26 de enero de 2026, la parte apelada presentó *Moción de Desestimación y Solicitud de Sanciones por Temeridad*. Aseveró que, el pleito era una dúplica de otro litigio, "forum shopping", e impedimento colateral. Considerado el escrito, el tribunal concedió oportunidad al apelante para expresar su postura, y suspendió la vista señalada. La parte apelante presentó oposición a la desestimación solicitada. Así las cosas, el 28 de enero de 2026, el foro primario emitió la sentencia apelada en la cual desestimó el pleito. Concluyó que la controversia traída mediante la solicitud de interdicto estatutario fue adjudicada en un pleito de mayor antigüedad entre las partes y que, por tal razón, el tribunal carecía de jurisdicción para atender la demanda. El tribunal también encontró temerario al apelante e impuso honorarios de abogado por $1,500.00 a favor de cada codemandado. La parte apelante solicitó reconsideración, pero el tribunal denegó la petición. Inconforme, comparece ante este tribunal y señala los siguientes errores:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA POR FALTA DE JURISDICCIÓN, AL CONCLUIR QUE LA CONTROVERSIA CONSTITUÍA UNA IMPERMISIBLE DUPLICIDAD DE PLEITOS RESPECTO A LITIGIOS PREVIOS ENTRE LAS PARTES, CUANDO LA ACCIÓN INCOADA AL AMPARO DEL ARTÍCULO 7.15(A) DE LA LEY GENERAL DE CORPORACIONES SE FUNDAMENTABA EN EL ARTÍCULO 19(E) DE LOS ESTATUTOS DE LA FRFF, Y NO EN EL ARTÍCULO 19(F).

> SEGUNDO ERROR: ERRÓ EL TPI AL IMPONER HONORARIOS POR TEMERIDAD PESE A QUE LA ACCIÓN PRESENTADA PLANTEABA UNA CONTROVERSIA JURÍDICA GENUINA, SUSTENTADA EN UN FUNDAMENTO ESTATUTARIO EXPRESO Y EN HECHOS NUEVOS NO PREVIAMENTE ADJUDICADOS, LO QUE HACÍA IMPROCEDENTE CALIFICAR LA RECLAMACIÓN COMO FRÍVOLA O ABUSIVA DEL PROCESO JUDICIAL.

La parte apelada también compareció mediante alegato escrito. Por tanto, resolvemos el presente recurso con el beneficio de la comparecencia de las partes, el contenido del expediente electrónico y el derecho aplicable.

**-II-**

La doctrina de cosa juzgada, *res judicata pro veritate habetur*, es de antigua estirpe romana. De León y Olarieta, *Observaciones filosófico-jurídicas acerca de la autoridad de cosa juzgada*, 44 Rev. Gen. de Leg. y Juris. 5, 15-22 (1874). Es parte de nuestro Derecho Civil y es innecesario, excepto para fines comparativos, acudir a otras fuentes para su análisis. *A & P Gen. Contractors v. Asoc. Cana*, 110 DPR 753, 764 (1981). La doctrina de cosa juzgada "persigue poner fin a los litigios luego de que los tribunales los adjudiquen de forma definitiva y, de este modo, garantizar la certidumbre y la seguridad de los derechos declarados mediante una resolución judicial". *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 655 (2013). Así, pues, se fomenta el interés del Estado de que se les ponga fin a los litigios. *P.R. Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139, 151 (2008). Además, se protege el interés de los ciudadanos de no litigar la misma causa en múltiples ocasiones. *Íd.* Será necesario, para la aplicación de esta doctrina, que concurra la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. *Presidential v. Transcaribe*, 186 DPR 263, 274 (2012); *Fatach v. Triple S, Inc.*, 147 DPR 882, 889 (1999).

En lo que respecta al requisito de la identidad de cosas, significa que existe un segundo pleito el cual versa sobre el mismo asunto adjudicado en el primer pleito, aunque en uno la cosa se abordase totalmente y en el otro solo parcialmente, o que haya sido disminuida o alterada. *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212, 220 (1992). Los pleitos comparten identidad de cosas

cuando el juzgador de instancia, al emitir una determinación, arriesga contradecir una decisión anterior. *Presidential v. Transcaribe, supra,* págs. 274-275. La identidad de causas existe cuando los hechos y los fundamentos de las peticiones son idénticos en lo que afecta a la cuestión planteada. De manera que, al determinar si existe identidad de causas de acción, debemos preguntarnos si ambas reclamaciones se basan en la misma transacción o núcleo de hechos. *Íd.* Finalmente, en cuanto a la identidad de personas, esta se suscita cuando las partes del segundo pleito comparecieron en el pleito anterior, o se encuentran unidos por vínculos de solidaridad. *Presidential v. Transcaribe, supra,* págs. 275-276. Asimismo, la identidad de personas pueda darse porque existen entre las personas causahabientes en los pleitos una indivisibilidad en las prestaciones entre los que ostentan derecho a exigirlas u obligación de satisfacerlas. Al considerar lo que respecta a la identidad de las personas, se ha determinado que los efectos de la cosa juzgada se extienden a quienes intervienen en el proceso, a nombre y en interés propio. *Íd.*

-***B***-

La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), regula lo concerniente a la imposición de honorarios de abogado. La regla dispone que, en caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. La determinación sobre si una parte ha procedido con temeridad o no descansa en la sana discreción del tribunal sentenciador. *Ramírez v. Club Cala de Palmas,* 123 DPR 339, 349 (1989). El concepto de temeridad se trata de una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. El

propósito principal de autorizar la imposición de honorarios de abogado en casos de temeridad es el de establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987).

Existe temeridad en las siguientes situaciones: (1) hacer necesario un pleito que se pudo evitar; (2) prolongar innecesariamente un pleito; (3) causar que otra parte incurra en gestiones evitables; (4) contestar el demandado una demanda y negar su responsabilidad total, aunque la acepte posteriormente; (5) cuando el demandado se defiende injustificadamente de la acción; (6) si el demandado en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad, limitando la controversia a la fijación de la cuantía a ser concedida; (7) si el demandado se arriesga a litigar un caso del que se desprendía prima facie su negligencia; y (8) negar un hecho que le consta es cierto al que hace la alegación. *Fernández v. San Juan Cement Co., Inc.*, *supra*, págs. 718–719.

### -III-

### -A-

La parte apelante desea eliminar a la parte apelada del puesto de presidente de la Fundación Rigoberto Figueroa Figueroa. Expone, como motivo, la expiración del plazo dispuesto en el estatuto de la fundación. Transcribimos las alegaciones pertinentes de la demanda:

> 7. El 3 de abril de 2019 se suscribieron los Estatutos de la FRFF y se celebró reunión de la Junta de Directores, en la cual Toral fue

nombrado al cargo administrativo de Tesorero y Vicepresidente, cargos que aceptó. Exhibit I y II1.

8. Surge también de la Resolución Corporativa Núm. 01-2019 que el Miembro Fundador nombró a Toral como miembro inicial de la Junta de Directores por un término fijo de seis (6) años, conforme al Artículo 12 y al Artículo 16 de los Estatutos.

9. Dicha Resolución también reconoció el nombramiento que el Miembro Fundador hizo a Toral para ocupar el cargo de Presidente una vez el Sr. Rigoberto Figueroa Figueroa cesara en su puesto por razón de retiro, renuncia, enfermedad o muerte, nombramiento que Toral aceptó en la misma fecha de 3 de abril de 2019, conforme al Artículo 18 de los Estatutos.

[…]

10. Del Artículo 16 de los Estatutos se desprende que los miembros iniciales de la Junta fueron nombrados por un término fijo de seis (6) años. En el caso de Toral, dicho término venció el 3 de abril de 2025, fecha en que expiró su mandato como director inicial.

11. El Artículo 19(f) dispone que los directores cesan automáticamente "por el transcurso del período de su mandato si fueron nombrados por un determinado tiempo." 2

12. Por tanto, Toral cesó automáticamente como director el 3 de abril de 2025.

[…]

13. El 23 de enero de 2020, tras el fallecimiento del Miembro Fundador, Toral asumió el cargo administrativo de Presidente de la Junta, conforme a la Resolución Corporativa Núm. 02-2019. Exhibit III.3

14. El Artículo 17 de los Estatutos establece que los cargos administrativos tienen un mandato de seis (6) años4, por lo que el término de Toral como Presidente venció el 23 de enero de 2026, según él mismo ha reconocido en varios procedimientos judiciales.

15. …

Sobre la base de las alegaciones antes transcritas, la parte apelante solicitó como remedio:

1. Declare que José M. Toral Muñoz cesó como director de la FRFF el 3 de abril de 2025, conforme al Artículo 19(f) de los estatutos.

2. Declare que José M. Toral Muñoz cesó como Presidente de la FRFF el 23 de enero de 2026, conforme al Artículo 17 de los estatutos.

3. Declare que José M. Toral Muñoz cesó como director de la FRFF al amparo del Artículo 19(e) de los estatutos, por existir una resolución judicial que acogió una acción de responsabilidad en su contra, lo cual activa la causal automática de cese prevista en dicho artículo.

Empero, el asunto estuvo ante la consideración de otra sala del tribunal apelado, y fue resuelto mediante la *Resolución* del 19 de mayo de 2025, BY2023CV04591. Allí el foro primario determinó sobre el mismo asunto:

El Dr. Juan Carlos Vega Martínez y el Dr. José M. Toral Muñoz son al presente los únicos integrantes de la Junta de Directores de la Fundación Rigoberto Figueroa Figueroa, Corp. Las acciones derivativas de marras procuran la destitución de cada cual como miembro de la Junta de Directores por alegado incumplimiento con su deber de fiducia.

El doctor Vega Martínez solicitó la desestimación de la reconvención enmendada presentada por el doctor Toral Muñoz por academicidad, al ser del criterio que expiró el término del doctor Toral como director de la Fundación. Como corolario de lo anterior, deja entrever que su propia causa de acción también se habría tornado académica.

Las partes coinciden en que la disposición de la solicitud de desestimación se circunscribe a la aplicación e interpretación de los estatutos y dos resoluciones corporativas. Así quedó consignado en multiplicidad de escritos, postura elaborada en vista argumentativa celebrada en esta fecha.

Consecuente con el artículo 15 de los estatutos corporativos, la Junta de Directores se concibió para contar con un mínimo de tres miembros y un máximo de siete. A su vez, en los artículos 12 y 16, se estableció que el término de los directores de la Junta inicial sería de seis años. De otra parte, en el artículo 17, se dispuso que luego del nombramiento de los miembros de la Junta inicial y los cargos que ocuparían, la selección ulterior de presidente, secretario y tesorero implicaría el ejercicio de estos cargos por el término de seis años.

La Junta inicial se configuró el 3 de abril de 2019, en virtud de la resolución corporativa #01-2019 y el artículo 12 de los estatutos, con el Sr. Rigoberto Figueroa Figueroa como presidente, el Sr. Juan Cancel Alegría como secretario y el Dr. José M. Toral Muñoz como tesorero. En el artículo 15 de los estatutos, se contempló expresamente la sustitución de don Rigoberto, en caso de renuncia, incapacidad o muerte, por el Sr. Juan Carlos Vega Martínez. Ante el deceso de don Rigoberto el 7 de diciembre de 2019, se emitió resolución corporativa #02-2019 el 11 de marzo de 2020, que recogió los acuerdos de reunión celebrada el 22 de enero de 2020, mediante la cual se designó al doctor Toral como presidente y al señor Vega como director.

> Las partes contienden si el término del doctor Toral en la Junta de Directores es de seis años a partir de su designación como tesorero el 3 de abril de 2019, en aplicación del artículo 16 (postura del doctor Vega), o de seis años a partir de su designación como presidente en reunión de 22 de enero de 2020, en aplicación del artículo 17 (postura del doctor Toral).
>
> Independientemente del supuesto aplicable, no le asiste la razón al doctor Vega. Si arguyendo se considerase que la designación del doctor Toral como presidente en 2020 no constituyese el punto de partida del término aplicable, no se puede hacer abstracción que el artículo 16, en el cual descansa el doctor Vega, contiene una cláusula de continuidad. Expresamente dispone que los integrantes de la Junta inicial ocuparán sus puestos por espacio de seis años, pero permanecerán en sus cargos hasta que se decida su sustitución o renovación en reunión, de modo que las plazas no queden vacantes. No hay constancia de reunión o decisión alguna a tales fines, en gran medida, ante el impase entre los dos únicos directores. Obsérvese que en función del artículo 22 de los estatutos, una decisión mayoritaria válida de la Junta requiere la concurrencia de al menos dos directores. En fin, incluso de resultar de aplicación la pauta prevista en el artículo 16 de los estatutos corporativos, pertinente a la Junta inicial, según favorece el doctor Vega, el término como director del doctor Toral no habría expirado en función de la cláusula de continuidad.
>
> Cónsono con lo anterior, se provee no ha lugar a la solicitud de desestimación del doctor Vega Martínez.

Por tanto, concluimos que la demanda de la parte apelante es cosa juzgada. Nótese que el recurso plantea iguales señalamientos en lo relativo al puesto de presidente de la Fundación Rigoberto Figueroa Figueroa. Estas cuestiones fueron atendidos y adjudicados en la *Resolución* del 19 de mayo de 2025, BY2023CV04591. La referida resolución, impide re litigiar ante el foro de primera instancia, y entre las mismas partes, los asuntos ya adjudicados, los cuales advinieron finales. Estamos de acuerdo con el foro de primera instancia en cuanto a que: 1) la controversia presentada fue reclamada en el caso civil BY2023CV04591; y 2) permitir el nuevo pleito provocaría duplicidad de procedimientos adversativos. En este punto hacemos nuestras las siguientes expresiones del tribunal de primera instancia:

> Surge de autos que en el Caso Civil Núm. BY2023CV04591, el TPI de Guaynabo resolvió los méritos de los asuntos que ahora son traídos ante nuestra consideración, los mismos que se encuentran en espera de la determinación final y mandato del Tribunal Supremo. Lo solicitado nuevamente por el señor Vega implica una duplicidad de pleitos y *forum shopping*, lo que obliga que nos declaremos sin jurisdicción. Los dictámenes emitidos por el Tribunal de Guaynabo todavía no son finales ni firmes ya que las partes han ejercido su derecho constitucional de acudir a los foros apelativos a cuestionar los mismos. Por lo antes expuesto, concluimos que el Tribunal de Guaynabo es el foro que ostenta jurisdicción sobre la materia, al tener el pleito de mayor antigüedad y donde ya se adjudicaron las controversias nuevamente presentadas ante nos. Carecemos, pues, de jurisdicción para emitir cualquier dictamen.

En resumen, es forzoso concluir la aplicabilidad al caso de autos de la doctrina de la cosa juzgada. En consecuencia, no erró el tribunal al desestimar la demanda por cosa juzgada.

### -B-

Por último, la parte apelante asevera que la cuantía impuesta en concepto de honorarios de abogado no procede. La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), permite la imposición de honorarios de abogados en aquellos casos en que, una parte o su abogado actúe con temeridad o frivolidad. El concepto de temeridad se refiere a las actuaciones de una parte que provocan un pleito eludible o la indebida prolongación de este. Una vez determinada la existencia de temeridad, la imposición de honorarios de abogado es obligada. *Colón Santos v. Coop. Seg. Mult. P.R.*, 173 DPR 170, 188 (2008).

En cuanto a la imposición de honorarios de abogados, damos deferencia a la determinación de la ilustrada sala sentenciadora, pues percibió durante el trámite del pleito que, la parte apelante litigó un pleito innecesario. La actitud temeraria incurrida por el apelante queda demostrada, inclusive en esta etapa apelativa, al pretender demandar cuestiones de hechos decididas por el tribunal de primera instancia de forma final en

otro caso. En definitiva, la actuación contumaz del apelante en insistir en el presente litigio también ocasionó inconvenientes y gastos innecesarios al apelado.

No erró el foro primario al imponer honorarios de abogado a la parte apelante por haber demostrado temeridad en este caso.

### -*IV*-

Por los fundamentos antes expuestos, *confirmamos* la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones